J-S20014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF K.A.V. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: C.D.T., NATURAL MOTHER | No. 1358 WDA 2015 |

Appeal from the Order Entered August 13, 2015
In the Court of Common Pleas of Butler County
Orphans' Court Division, at No(s): OA No. 13 of 2015

BEFORE: PANELLA, J., OLSON, J., and PLATT[*], J.

MEMORANDUM BY: PANELLA, J.                   **FILED JUNE 24, 2016**

C.D.T. ("Mother") appeals from the order entered on August 13, 2015, in the Court of Common Pleas of Allegheny County, which involuntarily terminated her parental rights to her minor son, K.A.V. ("Child"), born in January 2005. We affirm.

Father and Stepmother filed a petition for involuntary termination of Mother's parental rights on April 15, 2015. The trial court appointed Maura Palumbi, Esquire, as counsel for Mother and Ronald Thomas, Esquire, as Guardian a*d litem* to represent Child.

The trial court summarized the relevant facts and procedural history as follows. Mother is the biological mother of Child. Father is the biological

---

[*] Retired Senior Judge specially assigned to the Superior Court.

father of Child. Mother and Father have never been married, but lived together when Child was born. They separated six months after Child's birth and Father moved out with Child and moved into his mother's home. Father moved due to concerns about Child's safety because of drug use involving maternal grandmother and maternal uncle. Paternal Grandmother watched Child when Father was working, and she was not working. In addition, Paternal Grandmother has continued to be the primary babysitter for Father and his wife ("Stepmother").

After Mother's separation from Father, she saw Child sporadically, a few days a week while Father was working, and paternal grandmother was unavailable to watch him. Mother was also given overnight visits. However, the overnight visits did not work out since Mother would call Father late at night to pick up Child, as she was unable to get him to sleep.

In 2009, Father filed a *pro se* custody complaint in order to obtain an award of primary physical custody. Father and Mother reached an agreement at the conciliation conference on March 19, 2009, and entered into an order the next day, giving Father primary physical custody of Child and giving Mother partial physical custody every other weekend and every other Wednesday night.

Mother did not appear for a custody review conference on September 18, 2009. Based upon the custody conciliator's recommendation, an order was entered on that date reaffirming primary physical custody with Father

and partial physical custody with Mother every other weekend and additional periods of partial custody, as agreed to by the parties.

Mother did not fully exercise the periods of partial custody given to her under the order. She would just see Child a day here and a day there. Whenever Mother did have Child, maternal grandmother, maternal uncle, or another man with whom she was living, would care for Child while Mother was out partying with friends.

Father encouraged Mother to see Child when he was younger and even offered to allow Mother to have custody of Child during his primary custody time. However, the frequency of Mother's visits decreased over time. Mother started coming around after she was absent for years. The last activity that Mother participated in was when Child was in kindergarten.

Father filed a complaint for custody on May 30, 2012, requesting that Mother's periods of partial custody be supervised. Father still had concerns for Child's safety because of drug use by Mother and members of Mother's family. Both Father and Mother appeared for the custody conciliation conference held on July 12, 2012. On July 16, 2012, the trial court entered an order confirming primary physical custody with Father and providing Mother with supervised visits once every week for a period of two hours to coincide with visitation of Mother's other Child, L. In August 2012, Mother voluntarily relinquished her parental rights to L. At the last supervised visit, Mother was told by Totin Family Services that when her visits with L.

stopped, she would have to pay to have her visits with Child supervised by Family Pathways.

Mother did not appear for the custody conciliation review on November 15, 2012. This resulted in a recommendation by the custody conciliator and an order on November 16, 2012, suspending Mother's custodial rights of Child. The order also indicated that Mother could file the appropriate pleading if she desired custody rights to Child. Mother has not seen, talked to, or had any contact with Child since her last supervised visit in 2012. Mother has also had no contact with Father since her custody rights with Child were suspended. In addition, Mother did not call paternal grandmother after her custody rights were suspended. Paternal grandmother has never hung up on Mother or refused to take phone calls from Mother.

Moreover, Mother knew and socialized with Stepmother before Stepmother knew Father. Mother did not telephone Stepmother about Child at any time after Stepmother began to live with Father in April 2012.

Mother has not sent any cards, letters, or gifts to Child, nor has Mother provided any financial support for Child other than a nominal amount of money paid to Father when Child was a baby.

Mother has had a history of drug addiction that continued through the date of the termination hearing. Mother was incarcerated in the Butler County Prison on May 19, 2015 for using opiates and cocaine. Mother has also been incarcerated numerous times on a variety of criminal charges

including retail theft, forgery, and probation violations. Mother also suffers from bipolar disorder, post-traumatic stress disorder, depression, anxiety, and obsessive-compulsive disorder.

Mother has given birth to three other children, but has not maintained parental rights to any of them. Mother's parental rights were involuntarily terminated to two of her children, while she voluntarily relinquished her rights to another child. Mother primarily resides with her mother.

Stepmother is employed full-time. She began to date Father in December 2011. They began to live together in April 2012, and were married on May 4, 2013. Stepmother and Father have an infant daughter. Father also has a fourteen-year-old son from a previous relationship who resides with them.

Father testified that Child has no relationship with Mother, and Child only speaks about Mother when Father brings her up. None of Mother's relatives see or attempt to keep in contact with Child.

However, Father testified that Child has a great relationship with Stepmother. Father testified that Stepmother is the only mother that child has known for the last seven years. Child loves Stepmother like a mother and calls her "Mom." Stepmother is the person who performs normal parental duties for Child including providing emotional support, attending school activities and parent-teacher conferences, helping him with his homework, taking him to doctor appointments, and involving him in

activities with her family. Stepmother desires to adopt Child. She notes that she would not treat Child differently if Child's adoption did not occur, but she feels that Child would be upset if the adoption did not occur.

During closing arguments, counsel for Mother orally requested a bonding assessment, which the trial court denied as untimely and unnecessary. Following the hearing, the trial court orally granted the petition terminating Mother's parental rights from the bench. The trial court found that clear and convincing evidence had been presented to terminate Mother's parental rights under Section 2511(a)(1) and (b), and indicated that more specific findings of fact and analysis would follow.

The trial court issued its findings of fact, opinion, and order of court, and decree terminating Mother's parental rights on August 13, 2015. This timely appeal followed.

We review the appeal from the termination of parental rights in accordance with the following standard.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained that

> [t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Id*. (citation and internal quotation marks omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), and (b), which provide as follows.

## § 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows.

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child *or* a refusal or failure to perform parental duties.

* * *

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of

termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

[T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (emphasis added) (citation omitted). *See also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa. Super 2008) (*en banc*).

Our Supreme Court stated that Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties, as the word *or* joins the two portions of the statute. *See In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998).

Here, the trial court found clear and convincing evidence that Mother has had no contact with Child for three years, which is in excess of the six month requirement as set forth under 23 Pa.C.S.A. § 2511(a)(1). Mother's failure to send Child any letters, birthday cards, or any gifts is evidence of Mother's intent to relinquish her parental claim. The court also found that Mother's failure to have *any* form of contact or communication demonstrated

- 9 -

Mother's patent failure and refusal to perform her parental duties. The record amply supports the trial court's findings. Mother's attempts to overturn the trial court's credibility findings are simply untenable.

Next, we review the termination of Mother's parental rights under section 2511(b). The focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

With regard to section 2511(b), the evidence reveals that Child has no bond with Mother, and, as a result, the termination of Mother's parental rights will have no immediate effect on the Child. The trial court found that

- 10 -

the termination of Mother's parental rights of Child will best meet the needs of Child and permit the Child to achieve the stability that he deserves.

The trial court also had before it competent evidence to support a finding that the Child has a strong emotional bond with Father and Stepmother, with whom he has been living, and who have taken exclusive care of all of his needs for the three years that Mother has not had contact with Child. In fact, Stepmother is the person who performs normal parental duties for Child including providing him emotional support, attending school activities and parent-teacher conferences, helping him with homework, and taking him to doctor's appointments. Stepmother desires to adopt Child. Thus, the trial court found that there is no evidence that Child would be adversely affected if Child's relationship with Mother were severed.

The competent evidence in the record shows Mother failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting . . . ." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008). She did not put herself in a position to assume daily parenting responsibilities so that she could develop a real bond with the Child. *See In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003).

A parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of

parenting." ***In Re Z.S.W.***, 946 A.2d 726, 732 (Pa. Super. 2008). Rather, a parent's basic constitutional right to the custody and rearing of her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parental care. ***See In re Z.P.***, 994 A.2d at 1120.

We find that there was competent evidence to support the trial court's decision that termination of Mother's parental rights best serves Child's developmental, physical, and emotional needs and welfare. Thus, we discern no abuse of discretion or error of law as to the trial court's termination of Mother's parental rights pursuant to Section 2511(b).

Accordingly, we affirm the trial court's order terminating Mother's parental rights to Child pursuant to Section 2511(a)(1) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2016